# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1363V

|  |  |
|---|---|
| CINDY SMITH,<br><br>                   Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                   Respondent. | Chief Special Master Corcoran<br><br>Filed: July 29, 2024 |

*Leah V. Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Dorian Hurley, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On October 13, 2020, Cindy Smith filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccination. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a "Motions Day" hearing on entitlement and damages, I find that Petitioner is entitled to compensation, and I award damages in the amount of **$110,000.00**, **representing actual pain and suffering, plus**

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$3,483.98 for out-of-pocket unreimbursed expenses, for a total award of $113,483.98.**

### I.   Relevant Procedural History

This case was activated from "pre-assignment review" on October 29, 2020. (ECF No. 9). The parties attempted settlement, but their efforts were unsuccessful, and Respondent filed his contesting Rule 4(c) Report on July 25, 2022. (ECF No. 23). I ordered the parties to submit briefing regarding entitlement and damages on January 9, 2023, along with any additional outstanding evidence. (ECF No. 24). Petitioner filed her brief on March 13, 2023, Respondent filed his response on May 1, 2023, and Petitioner filed a reply June 29, 2023. The parties also filed a joint status report on June 26, 2023, indicating that they had agreed on a number for past out-of-pocket unreimbursed expenses and that the only damages to be determined were for pain and suffering. (ECF No. 31).

On May 23, 2024, I proposed this case for an expedited hearing on June 28, 2024, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. (ECF No. 35). The parties agreed, and the "Motions Day" hearing took place as scheduled. (ECF No. 38). During the hearing, I orally ruled on Petitioner's entitlement to compensation, and then made an oral damages determination. This Decision memorializes those findings and determinations.

### II.   Factual Findings and Ruling on Entitlement

#### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a

petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent seriously contests is the second criterion - whether the onset of Petitioner's pain occurred within 48 hours of vaccination. Response at 8; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). He emphasizes that even though Petitioner visited her doctor six days after vaccination, the medical records for that visit make no mention of any complaint of shoulder pain, and that Petitioner was able to have her blood pressure taken on her left arm without issue. Response at 9. Petitioner's first record of post-vaccination shoulder pain was from fourteen days following her vaccination.

Notwithstanding Respondent's objection, I find that the delay in question is not facially unreasonable, especially in comparison to what has characterized the course of seeking treatment for many other successful claims. In addition, it is frequently observed that claimants expect the post-vaccination pain to be transient, or not serious enough to merit evaluation by a medical professional. In this case, Petitioner's scheduled medical visit six days post-vaccination was for other pre-existing health concerns unrelated to her shoulder. It is not unreasonable that Petitioner may have limited her discussions with her doctor that day to her other health concerns, or that she did mention her shoulder pain but the doctor did not make note of it because that was not the primary focus of the visit. Indeed, Petitioner stated in an affidavit that she complained of both her cough and shoulder pain during that visit. Ex. 9 at 1. Not withstanding this one visit for unrelated concerns, Petitioner sought treatment for her shoulder pain in a relatively timely manner (i.e., less than a month after vaccination).

Otherwise, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the

record in this case does not reveal either a prior or current condition, pain and limited range of motion ("ROM") other than in Petitioner's injured left shoulder, and no other condition or abnormality which would explain Petitioner's symptoms. Other than the aforementioned visit, Petitioner's medical records consistently reflect her reporting immediate shoulder pain post-vaccination. Thus, and as I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

Respondent has argued in passing that Petitioner failed to show that her alleged vaccine injury lasted for more than six months. Respondent's Report at 11-12. However, this argument was completely omitted from his Response brief, and was not mentioned at oral argument. Indeed, by the time this case reached the briefing stage, it seems that Respondent completely abandoned any argument that Petitioner's shoulder injury did not meet the six-month severity requirement. Response at 12 ("Rather, while this is a case that involves surgical intervention, the records document that petitioner experienced a mild-to-moderate SIRVA as evidenced by the short duration of her active treatment (ten months), and overall minimal treatment outside of surgery.") I do not find Respondent's initial contention that Petitioner's election to have surgery three months after vaccination to obviate the six-month severity requirement. Although there were times post-surgery that Petitioner described her pain as a zero out of ten, the record does not reflect that Petitioner ever described a permanent pain-free state. Thus, while it is clear that Petitioner's surgery improved her condition, it cannot be said that her symptoms abated fully before the severity cut-off.

### III. Compensation to be Awarded

### A. Parties Arguments

Prior to oral argument, the parties submitted that they had agreed on an amount to be awarded for Petitioner's out-of-pocket unreimbursed expensed. Therefore, the only issue of contention remaining concerning damages is for past pain and suffering.

Petitioner seeks $160,000.00, maintaining that her treatment involved multiple doctor's appointments, an MRI, physical therapy, narcotic pain medication, and surgery, and that she still experiences the sequela of her SIRVA injury to this day. Br. at 17. She

5

favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Reed, Reynolds, and Hooper,* who received $160,000.00, $150,000.00, and $185,000.00, respectively for their past pain and suffering.[4] *Id.* at 23-25.

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $77,500.00. Response at 16. Respondent argues that the facts and circumstance more closely resemble, but are less severe, than the circumstances of the petitioner in *Hunt* and *Shelton*, in which the petitioners were awarded $95,000.00 and $97,500.00 respectively.[5] *Id.* at 14-16. He also maintains that Petitioner's case is distinguishable from the cases Petitioner cites, because of the injury's milder nature. *Id.* Indeed, at oral argument, Respondent contended that the instant case was less severe than those in *Hunt* and *Shelton* because the petitioners in those cases had more severe treatment – more physical therapy sessions, more steroid injections and more significant complaints of pain. Transcript at 17 (ECF No. 38).

In her reply, Petitioner reiterates her belief that her cited cases stand as appropriate comparables to the instant case but does not retort against the cases cited to by Respondent.

### A. Legal Standards for Pain and Suffering Awards

In another decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

---

[4] *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019); *Reynolds v. Sec'y of Health & Hum. Servs.,* No.20-294V, 2022 WL 17819545 (Fed. Cl. Spec. Mstr. Nov 7, 2022); *Hooper v. Sec'y of Health & Hum. Servs.,* No. 17-12V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019).

[5] *Hunt v. Sec'y of Health & Hum Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. Jun. 16, 2022); *Shelton v. Sec'y of Health & Hum. Servs.*, No. 19-279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021).

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### B.  Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on June 28, 2024. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on June 28, 2024 (which is fully adopted herein), **I find that $110,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

In making this determination, I have considered relevant facts such as the mildness of Petitioner's left shoulder pain and limited ROM – especially prior to surgery - the longer duration of her overall injury, and the difficulties she experienced during her post-surgical recovery. Prior to surgery, Petitioner consistently reported mild-to-moderate pain and limited range of motion in her left shoulder and when the pain did not subside after the recommended treatment of ice, heat, over the counter pain medication, and home exercise, her doctors ordered an MRI. The results of this MRI confirmed the need for surgical intervention. Post-surgery, Petitioner consistently reported improved pain, although the pain had not completely abated (records showing pain at a zero out of ten at best and a four out of ten at worst). Ex. 6 at 6-8. Her post-surgery treatment also involved 12 PT sessions (9 immediately post-surgery, followed by a delay due to the onset of the COVID pandemic in which Petitioner transitioned to home exercise, and three additional sessions later). Ex. 11. Ultimately, petitioner's doctor determined that PT was likely aggravating Petitioner's shoulder pain and therefore advised her to stop. Ex. 13 at 2. Follow-up visits reiterated that Petitioner's shoulder pain was livable, but that it was not 100% healed, and that over-the-counter anti-inflammatories and home exercise represented the best course of treatment moving forward. Ex. 14 at 1-2.

---

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

The overall severity of the SIRVA in the instant case was not high enough to warrant $160,000.00 in damages. The cases cited to by Petitioner are distinguishable due to the greater severity of injury in those circumstances. In *Reed*, for example, the petitioner suffered pain levels of 6-9 out of ten prior to surgery while also necessitating more than a dozen physical therapy sessions and pain levels of 3-6 out of ten in the four months post-surgery while necessitating 18 physical therapy sessions. *Reed*, 2019 WL 1222925, at *3-9, 15. Additionally, the petitioner's pain post-surgery was severe enough that she sought treatment from a pain management specialist and was prescribed strong opioid medication to manage her pain. *Id.* at *9.

In *Reynolds*, although the petitioner reported only mild to moderate pain three to six out of ten, the petitioner required two cortisone injections and 24 physical therapy sessions prior to surgery and two cortisone injections and 25 PT sessions post-surgery. Additionally, the pain experienced by the petitioner was more severe following surgery than prior to it, with the petitioner receiving a five percent disability ten months post-surgery and almost two years post-vaccination. *Reynolds,* 2019 WL 17819545, at *5.

Finally, in *Hooper*, the petitioner's pain was severe enough that he sought medical intervention two days post-vaccination and reported pain at ten out of ten in multiple treatment sessions. *Hooper*, 2019 WL 1561519, at *8. In fact, petitioner's pain was deemed "severe" for approximately two years following his vaccination; several years after the initial injury, petitioner had lost 50% of his left arm function with a persistent pain of 0-4 out of 10 and reduced range of motion. *Id.* at 9. Petitioner's injury was severe enough to warrant future pain and suffering damages as well.

Conversely, Respondent's cited cases of *Shelton* and *Hunt* are distinguishable as less severe injuries than the instant case. As I noted at oral argument, *Shelton* exists as an outlier due to the length of time (approximately five months) that the petitioner delayed seeking treatment, and the evidence that the petitioner had mostly recovered post-surgery. *Shelton*, 2021 WL 2550093, at *8. In *Hunt*, although the petitioner had surgery approximately fifteen months after vaccination, she was able to enjoy prolonged periods of time with little to no pain during that period due to corticosteroid injections. *Hunt*, 2022 WL 2826662, at *9. In the instant case, Petitioner's SIRVA was severe enough that following her MRI in November 2019, she was recommended surgery to treat her torn rotator cuff rather than more conservative treatment such as corticosteroid injections. That Petitioner needed surgical intervention only three months after the vaccination speaks to the overall severity of her shoulder injury.

Taking into account the record of Petitioner's SIRVA and the comparable cases cited by Petitioner and Respondent, as well as my experience in adjudicating similar

cases, I find that $110,000.00 represents a reasonable amount of compensation for Petitioner's actual pain and suffering.

## IV. Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $110,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[7] Finally, pursuant to the agreement of the parties, I find that $3,483.98 represents a fair and appropriate amount of compensation for Petitioner's out-of-pocket unreimbursed expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $113,483.98, representing compensation for her actual pain and suffering and out-of-pocket unreimbursed expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.